Ward *v.* Harrington et ux.

---

ROBERT J. WARD *vs.* WILLIAM C. HARRINGTON et ux.

C. L. having made his last will and testament, died in the county of H. in the year 1834, and he directed his executors to keep his property together, which consisted of a plantation and slaves, until certain of his children should arrive at full age, and to apply the product or increase of said property to the payment of his just debts and the maintenance of his family. At sundry times thereafter a mercantile house in the town of Tehula, by the style of E. & W., advanced to T. T. L., one of the executors, divers sums of money, and various articles for the benefit of said estate ; and many of the articles furnished to said T. T. L. were for himself, but they were all charged to the

Ward *v.* Harrington et ux.

estate of C. L. In the year 1842, E. & W. having failed in business, and they being largely indebted to W., M. & Co., transferred said account created by the said executor (T. T. L.) to the said W., M. & Co., (W. becoming the holder,) and an agreement was entered into with T. T. L. to confess as executor five judgments for six hundred dollars each in the circuit court, upon two of which judgments executions were issued and levied by the sheriff upon certain slaves in the possession of H. and wife, who had received them in a division of the estate of C. L. *Held*, that if under the testimony it did appear that any thing was due from the estate of C. L., the will gave the executors no power to encumber the property by the creation of new liabilities; and whatever powers they possessed in this respect extended only to the proceeds or income of the estate, which makes it necessary, before W. can recover, for him to make proof that the various articles furnished were necessary for the support and preservation of the estate, the income being insufficient for that purpose.

On appeal from the northern district chancery court at Carrollton; Hon. Henry Dickinson, vice-chancellor.

Thomas T. Loud, as executor of Charles Loud, deceased, at the April term, 1844, of the circuit court of Holmes county, confessed several judgments to Robert J. Ward, each for $600, with stay of execution from one to five years. Part of said judgments were paid, and *fi. fas.* emanating from two of them were levied upon certain negroes of the estate of Charles Loud, which since the rendition of the judgments had been distributed by said executor to Mrs. Harrington, one of the appellees. To enjoin the sale of said negroes, and to have the judgments, so far as she is interested, set aside, the bill in this case was filed. Charles Loud left a large real and personal estate, ($50,000 or $55,000,) which by his will he bequeathed to his widow and three children, Thomas T. and R. C. Loud, and said Martha Harrington.

The will directs the property to be kept together, and the plantation to be cultivated by his negroes. The executor is authorized to make necessary purchases to carry on the farm. On the part of R. J. Ward it is alleged, that the debt upon which the judgments were founded was for plantation supplies, and for such articles as the executor was authorized to contract for. On the other hand, it is contended that the debt was for an individual liability of Thomas T. Loud; that part of the

judgments have been paid, and that he confessed the judgments without authority. The defendant, Robert J. Ward, denies in his answer every material allegation of the bill. The deposition of the said Thomas T. Loud was taken on behalf of Harrington and wife; to the reading of which said Ward excepted, on the ground that Loud was interested. Harrington and wife also read depositions of W. H. Johnson and W. H. Lee. The statement of Caleb Worley was read as evidence, by consent of both parties.

By said Caleb Worley's statement, it appears that the debt upon which the judgments were based was originally due to Elliott & Worley, of which firm he was a member. He says, in the winter of 1842 Elliott & Worley suspended payment in Tehula, being then indebted to Ward, Moffitt & Co., (said Ward being surviving partner,) and that the estate of Charles Loud owed Elliott & Worley about $5,000, upon which suit had been instituted. Afterwards Elliott & Worley transferred the account to Ward, Moffitt & Co. After the transfer, said Ward and Thomas T. Loud, the executor of Charles Loud, compromised the debt and suit by Thomas T. Loud, as executor, confessing five judgments to said Ward, amounting to $3,000. In Elliott & Worley's account against the estate of Charles Loud, all the articles furnished the family were charged to the estate. A small portion, as well as recollected by witness, was for the individual use of different members of the family. At least $4,000 of the amount, from his best recollection, " was furnished for the estate direct, such as paying executions, furnishing supplies, overseer's wages," &c.

The injunction was made perpetual, and the defendant below appealed.

*Dyer* and *Owen,* for appellant.

Thomas T. Loud, as one of the executors of the will of his father Charles Loud, confessed the judgments in favor of Ward, which, upon inspection, it will be seen are formal judgments against him as executor, to be satisfied out of the goods of the deceased in his hands unadministered, and not against him in his individual capacity. The executions emanating

from them were levied on the separate property of Mrs. Harrington, which she had received from her father's estate.

Now, if her property pays these judgments, she can go back upon said Thomas T. Loud, one of the co-legatees, for contribution. He would be bound to her for one third of the sum for which her property might be sold. He, then, has a clear interest in showing that the judgments were paid, as he attempts to prove, and also in showing that the debt was due from him, and not from the estate. It may be asked, How could he possibly be interested in proving the debt was due from him and not from the estate? If the original judgments are set aside and Ward thrown back on the account, he could not recover on it, because it is barred by limitation. But if Mrs. Harrington pays it, she can call on Thomas T. Loud for contribution and against her claim he could not plead the statute of limitations, as her right would not arise until she pays the debt. Before that period the statute could not commence running against her, and if she then be, as now, a married woman, it would not run against her at all. It then follows that Loud is directly interested in defeating the judgments. And if interested in the result of the suit to any extent, no matter how small the amount may be, he cannot testify. 1 Greenl. Ev., sect. 391. It may be contended by the other side, that the judgments may stand good against Loud, though declared void against the estate of his father. Such a proposition is, we think, wholly untenable. The judgments do not purport to be against him; no recovery has been had against him individually. No executions from the judgments can be issued against his individual property, but might be against the goods and chattels of his testator in his hands. To all intents and purposes the judgments, so far as he is personally concerned, had as well be against a third party as against him as executor. If the circuit court was now to change the judgments and render them against Loud personally, would they not be new and different judgments? Certainly they would be, because as they now stand they are against Charles Loud's estate, binding his personal property only. If changed they would be against Thomas T. Loud, and would be against his personal and real

estate both. Whence does the circuit court derive the power to make such an alteration in its judgments? We know of no law that confers it. The term at which the judgments were obtained has long since passed, and upon the adjournment of that term they become final, and over them the circuit court had no further control. Could judgments be recovered against Loud personally by *scire facias* in this case? We think not. He is not sought to be made liable on the ground that he has committed a *devastavit*. Nothing of this sort is pretended. The main office of a *scire facias* is to enforce execution upon a judgment already recovered; not to set aside the original judgment and in the same proceeding recover a judgment of a different character against a different person. A *scire facias* is but the continuance of a suit before commenced, and not a new suit. Its object is to give the party interested the advantage of his judgment. 2d Bouvier, Law Dict. 499; 2d Tidd's Pr. 982. If a distinct judgment could not be recovered against Loud by *sci. fa.*, and in this case it is apparent that it could not be, upon the vacating the judgment by decree of the chancery court, we would be thrown back upon the account, upon which the judgments were recovered, and it being barred, we would be without redress. Loud is, therefore, clearly interested in vacating the judgments, and unless his evidence is read the bill cannot be sustained. Further, he confessed the judgments as executor, thereby solemnly admitting the debt was due from his father. He admitted it by the judgment of a court. Is he not estopped? Shall he be permitted to go behind the judgments? Shall he be permitted to deny what he has done? Shall he be allowed to repudiate his own act? He confessed the debt was due from the estate in the most deliberate manner, and shall he now be suffered to stamp his own act with falsehood, and prove that he was guilty of fraud in confessing the judgments? Good policy, and every consideration of propriety, forbid that he should be permitted to do so. A party to a negotiable instrument, who has given it currency by his signature, cannot afterwards attack it by his evidence. In the case of *Walton* v. *Shelly*, 1 T. R. 296, Lord Mansfield uses this strong language, that it is "of consequence to mankind that no person should hang out

Ward *v.* Harrington et ux.

false colors to deceive them by first affixing his signature to a paper, and then afterwards giving testimony to invalidate it." *Nemo allegans suam turpitudinem est audiendus.* 1 Greenl. Ev. § 383. This court has held the same doctrine. The same policy that denies the right to the maker of a negotiable note to impeach it, ought, it seems to us, to forbid a defendant impeaching a judgment. If Loud's evidence was inadmissible, the decree must be reversed; for if his testimony is excluded, there is no testimony to sustain it.

2d. We will now endeavor to show, that even supposing Loud was a competent witness, the chancery court erred in sustaining the bill. By the terms of the will of Charles Loud, his executors were authorized to carry on the plantation, and was, therefore, empowered to employ overseers and buy necessary supplies. Having this authority, we contend that he very properly exercised it, and that the articles charged in the account upon which the judgments were founded, were bought for the use and benefit of the estate. Take the whole proof in the case, and it seems to us that the irresistible deduction is that the account was due from the estate of Charles Loud. In the first place, Thomas T. Loud, the principal witness against us, by confessing the judgments as executor, admitted solemnly and deliberately that the money was due from the estate. He did so too at a time when the facts were fresh in his memory, and must have known who owed the debt, and also before the account, if properly chargeable to him, was barred by the statute of limitations. If he confessed judgments against the estate for an indebtedness from himself, he was guilty of a high dereliction of duty, indeed of a fraud upon the estate, and the presumption ought not to be indulged that he did, or intended any thing of the sort. The admission, then, that the estate owed the debt, should weigh much against his testimony now that it does not owe it.

*Sheppard*, for appellees.

The will of Charles Loud, directing that the property should be kept together, does not confer upon the executor any greater power to contract debts, than can be exercised by an executor

or administrator, when proceeding under the direction of the statute to finish a crop planted at the time of the death of the decedent.

Such power is confined to the object for which it is conferred, the necessary expenditures for the farm, and cannot create a charge on the estate, but only the gross profits. A party dealing with an executor is presumed to look to the source of the power, and thus be charged with a notice of its limits and extent. The creditor takes the risks of profit, and could resort to other funds of the estate only when the profits had been legitimately applied to discharge other debts in due course of administration. *Emanuel et al.* v. *Norlom & Burwell,* 7 Howard, 154.

The slaves were all bequeathed to his children by the testator, and no power is given to the executor to sell them for any purpose; and to allow the executor to contract debts, as a charge on the slaves, and thus indirectly effect a sale, would be inconsistent with the provisions of the will.

The account on which the judgments were predicated, is set out at large in the record as an exhibit to the answer of Loud, and is proved to have been rendered by the firm of Elliott & Worly. Referring to this account, it will be seen that the credit was given to Thomas T. Loud individually, and not as executor; that the bulk of the debt was created during 1839 and 1840, and includes many items for cash, and others manifestly not legitimate expenses for the farm. This account is credited to an amount exceeding twelve thousand dollars, including about 580 bales of cotton, the crop of 1839 and 1840. All the credits were derived from the estate of Charles Loud.

If they thus received this large amount, embracing all the proceeds of the farm, it may safely be presumed that they obtained enough to satisfy necessary expenditures, more especially as there is an absence of proof that there was any failure of the crop during that time.

Johnston states that he had acted as the administrator on this estate with the will annexed, from 1834 until 1837. That the estate was worth about fifty thousand dollars; then it may reasonably be supposed that all the debts due by the testator had been satisfied, rebutting any presumption that the advances

received by Thomas T. Loud from Elliott & Worly had been applied for that purpose. It also appears that T. T. Loud's habits were expensive during 1839 and 1840, and that he had no property except what he derived from this estate.

It is incumbent on a creditor seeking to charge an estate with a debt contracted with an executor, to show affirmatively that it was a clear and just liability of the estate. *Steel et al.* v. *Mc-Dowel*, 9 S. & M. 100.

But from the facts above referred to, we think it clear that the balance of this account was due for the individual debt of Thomas T. Loud. This conclusion is sustained by the direct testimony of Loud that it was his separate debt, and that he gave Ward notice of the fact when he agreed to confess the judgments, and that he gave the confession of judgments as executor, because favorable terms were offered by the creditor if he would do so.

The statement of Worly is not inconsistent with this conclusion. But if it were, it must yield to the great preponderance of proof; it may be true, as he states, that the greater part of the account was for the farm. But it is also true, that the greater part had been paid from the proceeds of the plantation.

The fact that the judgments confessed were for the separate debt of the executor, and this known to the creditor, renders them fraudulent so far as the legatees are concerned; they can constitute no charge in their legacy.

The pretence of compromise can give no advantage. An executor can make no compromise, the effect of which is to bind the estate for his debt; such a purpose is unauthorized.

It is objected by appellant that Thomas T. Loud was an incompetent witness, because of an interest in the result of the suit. The object of the bill was not to enjoin the judgment, but simply to prevent the sale of complainant's legacy. Now whatever interest this witness has in this result, is certainly against the party calling him. It is his interest to make the property subject to hold the estate bound, in preference to establishing a separate debt on himself. It is like the case of the trial of the issues of the right of property taken in execution. If the claimant calls the defendant in execution as a witness, he

21*

is deemed competent, because his interest is against the party by whom he is called. *Ewing* v. *Cargill*, 13 S. & M. 79.

Again, if the witness were sued in debt on the judgments confessed, he could show no cause against being charged *de bonis propriis*, when suggesting that they were his individual debt.

Mr. Justice FISHER delivered the opinion of the court.

The object of this bill by the appellees in the court below, was to perpetually enjoin the appellant from enforcing certain executions against certain slaves and other property, which they claim as legatees under the last will and testament of Charles Loud, deceased. Upon final hearing the court below made a decree, according to the prayer of the bill; from which the present appeal has been prosecuted to this court.

The case, as it appears by the record, is substantially as follows: Charles Loud, the testator, having made his last will and testament, died in the county of Holmes, some time during the year 1834. By his will he directed his executors to keep his property, consisting of a plantation and slaves, together, till certain of his children should arrive at full age; and to apply the product or income of said property to the payment of his just debts and to the maintenance of his family.

It appears that at sundry times, a commercial house in the town of Tehula, doing business under the name of Elliott & Worly, advanced to Thomas T. Loud, one of the executors, divers sums of money, and various articles for the benefit of said estate. All moneys and articles furnished to the said executor, although many of them were for himself individually, were nevertheless charged to the estate of Charles Loud, deceased. Some time about the year 1842, Elliott & Worly having failed in business, and being largely indebted to Ward, Moffett & Co., transferred the account created by the executor, Thomas T. Loud, and charged to the estate of Charles Loud, to the said Ward, Moffett & Co. Robert J. Ward becoming the holder of said account, entered into an agreement with the executor Thomas T. Loud, to confess, as such executor, five judgments, for the sum of six hundred dollars each, in the cir-

cuit court of Holmes county, with a stay of execution till a certain time. Executions having issued upon two of said judgments, were, by the sheriff of Holmes county, levied upon the slaves in the possession of the appellees, which had fallen to them under the division of Charles Loud's estate.

Waiving the consideration of the case, as it appears by the testimony taken on behalf of the appellees, showing that the account, so far as it was justly chargeable against Charles Loud's estate, had been fully paid; it may be safely rested upon the provisions of the will, under which the executor acted; and in virtue of which alone the appellant can hope to enforce his judgments, if such right exists, against the slaves in the possession of the appellees. The will gives the executors no power to encumber the property left by the testator, by the creation of new debts, or by the assumption of new liabilities. Whatever powers they possessed in this respect, extended only to the proceeds or income of the estate. If, as seems to be insisted in the answer, the money advanced by Elliott & Worly was used in the payment of debts which existed at the date of the testator's death, or that the various articles furnished were necessary for the support and preservation of the estate, the income being insufficient for this purpose, these are facts which the party seeking to charge the property must clearly establish. Until such proof shall be made, he shows no case entitling him to relief in a court of equity. No such proof having been made, the decree of the court below must be regarded as correct.

Decree affirmed.